**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 17-cv-02941-CMA-STV

RYAN PARTRIDGE,

      Plaintiff,

v.

JOE PELLE,
BRUCE HAAS,
JEFF GOETZ,
SHANE MCGURK,
T. SMITH,
KARMEN KOGER,
THOMAS GROFF,
PAMELA LEVETT,
AMANDA TAYLOR,
ERIK CONTRERAS,
CHRISTOPHER MECCA,
DEBBIE STEVENS,
ROBERT HICKS,
DAN NEWCOMB,
CHUCK SISNEROS,
GREGORY CLEM,
CHRISTIAN BERRINGER,
DALE GREENE,
VILI MAUMAU,
ANTHONY HOLLONDS,
MERGEN MITTLEIDER, and
LYDIA MITCHELL,

      Defendants.

---

**ORDER AFFIRMING IN PART AND REJECTING IN PART THE SEPTEMBER 18, 2018 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE ON DEFENDANTS' MOTIONS TO DISMISS**

---

This matter is before the Court upon the September 18, 2018 Recommendation of United States Magistrate Judge Scott T. Varholak that this Court grant in part and deny in part two Motions to Dismiss (Doc. ## 48, 66) pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. # 88.) The Sheriff's Defendants and Defendant Amanda Taylor (collectively, "Defendants") object to Magistrate Judge Varholak's Recommendation on several grounds. (Doc. ## 91, 96.) For the reasons described herein, the Court affirms in part and rejects in part the Recommendation.

## I.  BACKGROUND

The Magistrate Judge's Recommendation provides a recitation of the factual and procedural background of this dispute and is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, this Order will reiterate only what is necessary to address Defendants' Objections.

## A.  FACTUAL ALLEGATIONS

Plaintiff Ryan Partridge is a thirty-two-year-old resident of Boulder, Colorado. (Doc. # 1 at 5.) He suffers from schizophrenia and experiences episodes of psychosis, auditory and visual hallucinations, delusions, and paranoia. (*Id.*) Early symptoms of his mental illness presented while Plaintiff was in college. (*Id.*) In 2014 and 2015, Plaintiff's parents observed symptoms, including ticks, speaking irrationally, and serious paranoia. (*Id.*) Plaintiff's symptoms worsened in 2015 and 2016; his mental illness caused violent outbursts, for which Plaintiff's parents required assistance from law enforcement. (*Id.* at 6.) Plaintiff was arrested on various minor charges during this time period, resulting in numerous detentions at the Boulder County Jail ("BCJ"). (*Id.*)

This action arises out of Plaintiff's time in the BCJ in 2016: from February 2016 through June 7, 2016, and again from September 2016 through December 17, 2016. *See generally* (*id.*)  Plaintiff alleges that BCJ's administrators and employees were "well aware of his long and tragic history of mental illness" and of his "repeated efforts to inflict grievous harm upon himself," but that they nonetheless were deliberately indifferent to his serious medical needs and used excessive force against him.  (*Id.* at 2–4.)  Plaintiff contends that jail employees' actions "directly led to his self-mutilation, head and vertebrate injury, broken teeth, and ultimately, to his permanent blindness." (*Id.* at 3.)   Magistrate Judge Varholak detailed Plaintiff's allegations of his jailors' deliberate indifference and excessive force in chronological order in the Recommendation, *see* (Doc. # 88 at 2–13), and the Court need not repeat the abhorrent details of the alleged incidents here.

However, Defendants' Objections concern two specific events among the many alleged in Plaintiff's Complaint.  First, Plaintiff alleges that on November 1, 2016:

> [W]hile his psychosis remained completely untreated by [Defendants], [he] attempted suicide by jumping off the tier of the second-floor railing, hurtling head first toward a metal table below, striking his head on the metal table and landing on the cement floor below.  He fractured his lumbar spine and ribs.  Defendant Deputies Erik Contreras, Christopher Mecca, and Debbie Stevens were working the housing unit where [Plaintiff] was living on November 1. . . .  Despite knowing [Plaintiff] was schizophrenic, delusional, unmedicated, and suicidal, the deputies released [Plaintiff] to walk on the second tier of the jail.  It was there that [Plaintiff] climbed onto the top railing and . . . jumped 'head first.'

(Doc. # 1 at 12.)

Second, Plaintiff alleges that one day after a state court issued an emergency order to the Boulder County Sheriff to transport Plaintiff to the Colorado Mental Health

Institute at Pueblo ("CMHIP") and just hours after his parents phoned the BCJ and

"begged for help for their son":

> [A]round 9 p.m. on December 17, 2016, . . . Defendant Deputy Christian Berringer passed by [Plaintiff's] door and noticed he had dried blood on the side of his face that appeared to come from the corner of his eye. Defendant Deputy Berringer spoke with Deputy Smith, and Deputy Smith told him it had been like that before. The deputies did nothing.
>
> In fact, Deputy Smith had noticed at 7:45 p.m. that [Plaintiff] had blood on his cheek. Deputy Smith was with Nurse Dale Green, who also saw the blood. Nurse Green determined that he didn't believe it required immediate attention. Nothing was done.
>
> An hour later, Defendant Deputy Berringer again passed by [Plaintiff's] cell and now noticed a significant amount of blood and fluid from his left eye and his eye was swollen . . . Other deputies noted [Plaintiff] had blood on his hands. At this point, [Plaintiff's] eyes were swollen shut. He could not see. He had blood on his hands. According to officers, [Plaintiff] was not compliant when they attempted to place handcuffs on him. Even though he was covered in blood, with eyes swollen shut and blind, Deputy Smith slammed [Plaintiff] to the ground. Defendant Sgt. Maumau tased him. . . .
>
> All of these deputies knew [Plaintiff] suffered from serious mental illness and was known to self-mutilate.

(*Id.* at 17–18.) BCJ officials eventually took Plaintiff to the Boulder County Hospital

Emergency Room, which referred him to the Level 1 Trauma Center at Denver Health

Medical Center. (*Id.* at 19.) At 7:30 a.m. the following day, Plaintiff went into surgery.

(*Id.*) Doctors at Denver Health Medical Center diagnosed Plaintiff with "self-inflicted

ruptured globe and retinal detachment" and opined that Plaintiff is consequently

permanently blind. (*Id.*) With respect to Plaintiff's time at BCJ on the evening of

December 17, 2016, the Complaint further alleges:

> Since [Plaintiff's] eyes were swollen and some of the blood noted was dry and clotted [upon his admission to the county hospital], clearly it had been some time that [Plaintiff] sat in excruciating physical pain from using his six-week long nails to reach into his eye sockets and pluck out his own eyeballs in response to the delusions and voices that commanded him to do so.

(*Id.*)

## B.    PROCEDURAL HISTORY

Plaintiff initiated the instant action on December 7, 2017, against 22 individuals who were "acting under color of state law in their capacity as the Boulder County Sheriff, administrators of the jail, deputies and sergeants of the jail, or other jail staff" during Plaintiff's detentions at BCJ.  (*Id.* at 4.)   Defendant Joe Pelle was the Sheriff of Boulder County, and Defendant Bruce Haas and Defendant Jeff Goetz were division chiefs in the Sheriff's Office.  (*Id.* at 4.)  Defendant Shane McGurk was the Corrections Program Coordinator for the Boulder County Jail Mental Health Program.  (*Id.* at 15.) Defendants Pamela Levett, Amanda Taylor,[1] and Mergen Mittleider[2] were mental health workers at BCJ.  (*Id.* at 7, 11.)  All other Defendants—T. Smith; Karmen Koger; Thomas Groff; Erik Contreras; Christopher Mecca; Debbie Stevens; Robert Hicks; Dan Newcomb; Chuck Sisneros; Gregory Clem; Christian Berringer; Dale Greene; Vili Maumau; Anothony Hollands; and Lydia Mitchell—were Sheriff's deputies at BCJ. (Doc. # 88 at 2 n.1.)  Plaintiff asserts claims against all Defendants in their individual and official capacities, save for one exception; Plaintiff asserts claims against Defendant Pelle only in his official capacity as Sheriff.  (Doc. # 1.)

Plaintiff brings thirteen claims for relief:

1.  A claim under 42 U.S.C. § 1983 under the Fourteenth Amendment for deliberate indifference ("failure to provide medical care and treatment")

---

[1] Defendant Taylor was not employed by Boulder County, its Sheriff's Office, or the BCJ.  *See* (Doc. # 48 at 6 n.1.)

[2] Defendant Mittleider was not employed by Boulder County, its Sheriff's Office, or the BCJ. *See* (Doc. # 48 at 12 n.3.)

during the February or Mach 2016 "tooth-breaking incident," against Defendants Pelle, Haas, McGurk, Levett, and Taylor;

2. A claim under 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments for excessive force on March 3, 2016, against Defendants Hollonds and Groff;

3. A claim under 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments for excessive force on March 22, 2016, against Defendant Maumau;

4. A claim under 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments for excessive force on March 22, 2016, against Defendant Mitchell;

5. A claim under 42 U.S.C. § 1983 under the Fourteenth Amendment for deliberate indifference ("failure to provide medical care and treatment") on November 1, 2016, when Plaintiff jumped from the second tier of BCJ, against "Defendants Contreras, Mecca, Stevens, McGurk, Levett, [and] Taylor in their individual capacities and Defendants Pelle and Goetz in their official capacities;"

6. A claim under 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments for excessive force on December 2, 2016, against Defendants Groff, Kroger, Hicks, and Newcomb;

7. A claim under 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments for excessive force on December 8, 2016, against Defendants Sisneros, Palmer, Ubias, Gerhart, Koger, and Groff;[3]

8. A claim under 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments for excessive force on December 16, 2016, against Defendants Clem, Koger, and Groff;

---

[3] As Magistrate Judge Varholak observes in the Recommendation, Plaintiff's Seventh Claim is a cause of action against "Defendants . . Palmer, Ubias, [and] Gerhart," among others. (Doc. # 1 at 31); *see* (Doc. # 88 at 14 n.6.) These purported defendants are not named in the caption of the Complaint, in violation of Federal Rule of Civil Procedure 10(a). (Doc. # 1 at 1.) Additionally, Plaintiff has not requested a summons for or served these three purported defendants; the deadline to do so has long since passed. *See* (Doc. # 88 at 14 n.6.) The Court therefore does not consider Palmer, Ubias, or Gerhart as proper defendants in this action. It affirms Magistrate Judge Varholak's correspondent conclusion. *See* (*id.*)

9. A claim under 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments for excessive force on December 17, 2016, against Defendants T. Smith and Maumau;

10. A claim under 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments for deliberate indifference ("failure to provide medical care and treatment") on December 17, 2016 (the "final eye gouging incident"), against all Defendants;

11. A claim for violation of the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq.*, for "unlawful discrimination and failure to reasonably accommodate" against Defendant Boulder County;[4]

12. A claim for violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, for "unlawful discrimination" against Defendant Boulder County; and

13. A claim under 42 U.S.C. § 1983 under Fourteenth Amendment for "supervisory liability for failure to train and supervise" against Defendants Pelle, Goetz, and Haas.

(*Id.* at 23–42.)

The Sheriff's Defendants[5] moved to dismiss Claims One through Ten and Claim Thirteen on March 12, 2018. (Doc. # 48.) As to Claims One, Five, Ten, and Thirteen, the claims of deliberate indifference, the Sheriff's Defendants argued that the claims

---

[4] Plaintiff names "Defendant Boulder County" as the sole Defendant to Claims Eleven and Twelve. The Sheriff's Defendants accurately noted in their Reply that Boulder County was not named as a defendant in the caption nor served with a summons. (Doc. # 82 at 2 n.1.) No party has moved to dismiss Claims Eleven or Twelve yet. Magistrate Judge Varholak has advised the parties that he intends to discuss at the status conference on April 5, 2019, whether Boulder County has been properly named as a defendant, and if so, whether Boulder County has been properly served. (Doc. # 88 at 15 n.7); *see* (Doc. # 105.) Accordingly, the Court does not address Claims Eleven and Twelve in this Order.

[5] The "Sheriff's Defendants" are those Defendants who were employed by Boulder County in 2016 and are represented by the Boulder County Attorney's Office. The Sheriff's Defendants include: Defendants Joe Pelle; Bruce Haas; Jeff Goetz; Shane McGurk; Pamela Levett; T. Smith; Karmen Koger; Thomas Groff; Erik Contreras; Christopher Mecca; Debbie Stevens; Robert Hicks; Dan Newcomb; Chuck Sisneros; Gregory Clem; Christian Berringer; Dale Greene; Vili Maumau; Anonthony Hollands; and Lydia Mitchell. (Doc. # 48 at 2.)

Defendants Taylor and Mittleider are **not** included in the Sheriff's Defendants and are not represented by the Boulder County Attorney's Office.

must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff "failed to alleged facts to support" these claims. (*Id.* at 5–21.) The Sheriff's Defendants alternatively argued that the "individual [D]efendants are entitled to qualified immunity from [Plaintiff's] deliberate indifference claims." (*Id.* at 21–28.) As to Claims Two, Three, Four, Sixth, Seven, Eight, and Nine, the excessive force claims, the Sheriff's Defendants assert qualified immunity. (*Id.* at 28–37.) Plaintiff responded to the Sheriff's Defendants' Motion to Dismiss on April 30, 2018 (Doc. # 72), to which the Sheriff's Defendants replied on May 22, 2018 (Doc. # 82).

Defendants Taylor and Mittleider moved to dismiss all claims Plaintiff asserts against them—the deliberate indifference claims in Claims One, Five, and Ten—pursuant to Rule 12(b)(6) on April 23, 2018. (Doc. # 66.) Plaintiff filed his Response on May 29, 2018 (Doc. # 84), and Defendants Taylor and Mittleider replied on June 12, 2018 (Doc. # 86).

Magistrate Judge Varholak issued his Recommendation on both Motions to Dismiss on September 18, 2018. (Doc. # 88.) He recommended that this Court grant in part and deny in part both Motions to Dismiss:

. . . (3) the Motions be [granted] to the extent they seek dismissal of Claim One and that **Claim One be [dismissed]**;

(4) The Motions be [granted] to the extent they seek dismissal of Claim Ten with respect to Defendants Koger; Goff; Mitchell; Clem; Hicks; Newcomb; Sisneros; Contreras; Mecca; Stevens; Hollonds; Haas; Mittleider, and that **Claim Ten against those Defendants be [dismissed]**;

(5) Defendant Mittleider be dismissed as a [d]efendant; and

(6) The Motions be [denied] with respect to all other claims and Defendants.

(*Id.* at 53–54) (emphasis added).

The Sheriff's Defendants filed an Objection to the Recommendation on October 23, 2018, arguing that the Magistrate Judge erred by failing to recommend dismissal of certain Sheriff's Defendants on Claims Five, Ten, and Thirteen based on qualified immunity.  (Doc. # 96.)  Plaintiff responded to the Sheriff's Department Objection on November 20, 2018 (Doc. # 102), to which the Sheriff's Defendants replied on November 29, 2018 (Doc. # 104).

Defendant Taylor filed her own Objection to the Recommendation on October 2, 2018, on the grounds that the Magistrate Judge should have recommended dismissal of Claims Five and Ten against her pursuant to Rule 12(b)(6).  (Doc. # 91.)  Plaintiff filed a Response on October 30, 2018.  (Doc. # 97.)  Defendant Taylor replied in support of her Objection on November 21, 2018.  (Doc. # 103.)

## II.     APPLICABLE LEGAL PRINCIPLES

### A.     REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to."  An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996).  In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

**B.      DISMISSAL PURSUANT TO RULE 12(B)(6)**

The Court may dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. Pro. 12(b)(6).  To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to ' state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The scope of the allegations may not be "so general that they encompass a wide swath of conduct, much of it innocent" or else the plaintiff has "'not nudged [his] claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

**C.      DELIBERATE INDIFFERENCE**

Claims Five, Ten, and Thirteen all derive from Plaintiff's allegation that BCJ officials were deliberately indifferent to his medical needs and thereby violated his Fourteenth Amendment rights.  *See* (Doc. # 1 at 21–23, 28–42.)

"Under the Fourteenth Amendment due process clause, 'pretrial detainees . . . are entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment." *Martinez v. Boggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985)). The Eighth Amendment "prohibits deliberate indifference to an inmate's serious medical needs." *Spencer v. Abbott*, 731 F. App'x 731, 741 (10th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "'[A]n inadvertent failure to provide adequate medical care' does not rise to a constitutional violation" of the Eighth Amendment." *Martinez*, 563 F.3d at 1088 (citing *Estelle*, 429 U.S. at 105–06).

The Supreme Court has not set forth a standard governing pretrial detainees' claims of deprivation of medical care under the Fourteenth Amendment. *Fisher v. Glanz*, No. 14-CV-678-TCK-PJC, 2016 WL 1175239, *5 (N.D. Okla. Mar. 24, 2016). In the absence of a test specific to the Fourteenth Amendment, courts have "consistently applied the same 'deliberate indifference' test applied to claims filed by post-conviction inmates under the Eighth Amendment." *Id.* (citing *Garcia*, 768 F.2d at 307 (affirming the district court's use of the *Estelle* standard for deliberate indifference to serious medical needs where the pretrial detainee alleged failure to provide adequate medical care.)); *see also Martinez*, 563 F.3d at 1088–89; *Barrie v. Grand Cty.*, 119 F.3d 862, 866–70 (10th Cir. 1997); *Burke v. Glanz*, No. 11-CV-720-JED-PJC, 2016 WL 3961364, *15 (N.D. Okla. July 20, 2016).

The Court of Appeals for the Tenth Circuit recently questioned whether a different standard for deliberate indifference claims asserted by pretrial detainees

applies pursuant to the Fourteenth Amendment's due process clause, in light of the

Supreme Court's decision *in Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), but it

declined to answer the question.  *Perry v. Durborow*, 892 F.3d 1116, 1122 n.1 (10th Cir.

2018).

In *Kingsley*, the Supreme Court addressed a pretrial detainee's Section 1983

claim that several jail officials used excessive force against him, in violation of the

Fourteenth Amendment's due process clause.  135 S. Ct. at 2470.  Jail officials argued

that the relevant legal standard was subjective, citing cases arising under the Eighth

Amendment.  *Id.* at 2475.  The plaintiff argued that the correct standard for judging his

excessive force claim was objective unreasonableness.  *Id.* at 2471.  The Supreme

Court agreed with the plaintiff, concluding that the relevant standard for determining

whether the defendant's use of force was excessive "is objective not subjective.  Thus,

the defendant's state of mind is not a matter that a plaintiff is required to prove."  *Id.* at

2472.

After *Kinglsey*, the Courts of Appeal for the Second Circuit and the Ninth Circuit

have held that "**[t]he same objective analysis**" the Supreme Court sanctioned in

*Kingsley* "**should apply** to an officer's appreciation of the risks associated with an

unlawful condition of confinement **in a claim for deliberate indifference under the**

**Fourteenth Amendment**."  *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) (emphasis

added); *see Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016), *cert.*

*denied*, 137 S. Ct. 831 (2017).

The Tenth Circuit discussed these cases in *Perry*, 892 F.3d at 1122 n.1. In *Perry*, a pretrial detainee in a county jail alleged that a detention officer raped her. *Id.* at 1118. The plaintiff brought suit against the sheriff of the county jail under Section 1983, asserting that the sheriff was responsible for the alleged rape under a theory of supervisory liability and violated her Fourteenth Amendment rights. *Id.* The sheriff claimed qualified immunity. *Id.* In addressing whether the plaintiff satisfied the first step of the qualified immunity analysis (violation of her constitutional or statutory rights), the Tenth Circuit stated that because Section 1983 doesn't authorize liability under a theory of *respondeat superior*, the plaintiff had to demonstrate that the sheriff personally violated her constitutional rights. *Id.* at 1121. The plaintiff had to show an "affirmative link" between the sheriff and the alleged rape, according to the Tenth Circuit, which required her to establish (1) personal involvement; (2) causation; and (3) state of mind. *Id.* As to state of mind, the Tenth Circuit wrote, "in the context of a Fourteenth Amendment claim like this one, [the plaintiff] could establish the requisite state of mind by showing that [the sheriff] 'acted with deliberate indifference.'" *Id.* at 1122. The Tenth Circuit then explained and applied the deliberate indifference test arising under Eighth Amendment cases. *Id.* However, the Tenth Circuit wrote in a footnote:

> Because [the plaintiff] was a pretrial detainee at the time of the alleged rape, we question whether, in light of the Supreme Court's decision in *Kingsley v. Hendrickson*, she had to demonstrate that [the sheriff] "acted with subjective deliberate indifference, as opposed to objective deliberate indifference," to establish that he violated her constitutional rights. . . .
>
> **We haven't yet addressed *Kingsley*'s impact on Fourteenth Amendment claims like this one. And in the absence of briefing from either party, we decline to do so here**, where resolution of the issue would have no impact on the result of this appeal. Even assuming [the plaintiff]

had to demonstrate that [the sheriff] acted with subjective deliberate indifference, we must accept as true the district court's finding that he did so. Conversely, even assuming [the plaintiff] only had to demonstrate that [the sheriff] acted with objective deliberate indifference, this lower standard wasn't clearly established as of February 25, 2013.

*Id.* at 1122 n.1 (emphasis added) (internal citations omitted).

The case presently before this Court may be an opportunity to analyze Kingsley's impact on a Fourteenth Amendment deliberate indifference claim. However, just as the Tenth Circuit did in *Perry*, *id.* at 1122 n.1, and Magistrate Judge Varholak did in the Recommendation, *see* (Doc. # 88 at 21), the Court declines to conduct that analysis here. Both parties have made their arguments in the context of the subjective standard. The Court will therefore use the subjective deliberate indifference standard that arises under the Eighth Amendment.

The Eighth Amendment deliberate indifference standard "involves both an objective and a subjective component." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is met if the deprivation is "sufficiently serious." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). This component "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).

The subjective component "requires the plaintiff to present evidence of the prison official's culpable state of mind," *id.*—that the "prison official '[knew] of and disregard[ed] an excessive risk to inmate health or safety,'" *Sealock*, 218 F.3d at 1209 (quoting *Farmer*, 511 U.S. at 837). In order to have that culpable state of mind more generally, "a prison official must (1) 'be aware of facts from which the inference could be drawn that a substantial risk of harm exists,' (2) actually 'draw the inference,' and (3) 'fail to take reasonable steps to alleviate that risk.'" *Fisher*, 2016 WL 1175239 at *5 (quoting *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008)). In the context of a jail-suicide case, the particularized state of mind is "actual knowledge by a prison official of an individual inmate's substantial risk of suicide." *Cox v. Glanz*, 800 F.3d 1231, 1249 (10th Cir. 2015).

The subjective component "'does not require a finding of express intent to harm,' nor must a plaintiff 'show that a prison official acted or failed to act believing that harm actually would befall an inmate.'" *Spencer*, 731 F. App'x at 742 (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1442 (10th Cir. 1996); *Mata*, 437 F.3d at 752). Rather, "the plaintiff must show that 'the official acted or failed to act **despite his knowledge of a substantial risk** of serious harm.'" *Id.* (quoting *Mata*, 437 F.3d at 752). Relevant here, "[a] prison medical professional who serves 'solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'" *Mata*, 437 F.3d at 751 (quoting *Sealock*, 218 F.3d at 1211).

**D.   QUALIFIED IMMUNITY**

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known*." Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation omitted).  To defeat a defense of qualified immunity, a plaintiff must show: "(1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established at the time of the alleged violation." *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004); *see also Pearson*, 555 U.S. at 232.  The Court is not required to address these inquiries in any specific order, *Pearson*, 555 U.S. at 236–37, and if a plaintiff fails to carry either part of his or her two-part burden, the defendant is entitled to qualified immunity, *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

In reviewing a motion to dismiss "in the context of qualified immunity, a district court should not dismiss a complaint 'for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Peterson v. Jensen*, 371 F.3d 1199, 1201–02 (10th Cir. 2004) (quoting *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001)).  The Court "view[s] the complainant's allegations in the light most favorable to [the plaintiff]." *Estate of Vallina v. Petrescu*, No. 17-1428, 2018 WL 6331598, *1 (10th Cir. Dec. 4, 2018).  The plaintiff must allege facts sufficient "to give the defendants notice of the theory under which [his] claim is made." *Robbins v. Okla.*, 519 F.3d 1242, 1249 (10th Cir. 2008).  For purposes of a motion to dismiss based on qualified immunity, the plaintiff's allegations

need not "include 'all the factual allegations necessary to sustain a conclusion that [the]

defendant violated clearly established law.'"[6] *Id.* (quoting *Breindenbach v. Bolish*, 126

F.3d 1288, 1293 (10th Cir. 1997)).

## III.     <u>ANALYSIS</u>

### A.     THE SHERIFF'S DEFENDANTS' OBJECTIONS

The Sheriff's Defendants raise three objections, all of which concern Plaintiff's

claims of deliberate indifference: (1) the Magistrate Judge erred by failing "to

recommend dismissal of [Defendants] Contreras, Mecca, Stevens, McGurk, Levett,

Pelle, and Goetz based on qualified immunity from the Fifth Claim for relief;" (2) the

Magistrate Judge erred by failing "to recommend dismissal of [Defendants] McGurk,

Levett, Smith, Green, Berringer, Maumau, Pelle, and Goetz based on qualified immunity

from the Tenth Claim;" and (3) the Magistrate Judge erred by failing "to recommend

---

[6] The Court notes that "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (citing *Lone Star Indus., Inc. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir. 1992)).  The Court has previously explained:

> [A] court's ruling on the Motion to Dismiss [does not] otherwise dispose of the qualified immunity analysis on summary judgment. The qualified immunity inquiry at the motion to dismiss phase and at the summary judgment phase are separate and distinct—notably, Plaintiffs carry different burdens. On a motion to dismiss, the court determines whether the complaint's factual allegations state a plausible constitutional claim, not whether the complaint contains all the necessary factual allegations to sustain a conclusion that Defendants violated clearly established law. At summary judgment, "the record must clearly demonstrate the plaintiff[s] ha[ve] satisfied [their] heavy two-part burden," i.e., that Defendants violated [the plaintiff's] clearly established constitutional rights.

*Estate of Dixon v. Bd. of Cty. Comm'rs of Crowley Cty.*, No. 15-CV-02727-NYW, 2017 WL 1684134, *3 (D. Colo. May 3, 2017) (internal citations committed), *appeal filed*, No. 17-1164 (10th Cir. May 15, 2017).

dismissal of [Defendants] Pelle, Haas, and Goetz based on qualified immunity from the Thirteenth Claim for relief." (Doc. # 96 at 2–3.)

1. <u>Claim Five</u>

a. *Factual background*

Claim Five arises out Plaintiff's attempted suicide on November 1, 2016, when he "jump[ed] off the tier of the second-floor railing, hurtl[ed] head first toward a metal table below, [struck] his head on the metal table and land[ed] on the cement floor below." (Doc. # 1 at 12.) Defendants Contreras, Mecca, and Stevens were the BCJ deputies on duty at the time of his suicide attempt. (*Id.*) In Claim Five, Plaintiff asserts that these three deputies, as well as Defendants McGurk, Levett, Taylor, Pelle and Goetz, were deliberately indifferent to his "constitutional right not to be denied necessary medical care, protected by the Due Process Clause of the Fourteenth Amendment." (*Id.* at 29.) Plaintiff alleges:

> Defendants failed to examine, treat, and care for [his] worsening condition and failed to send [him] for treatment. They did so despite their knowledge of [his] serious medical needs, including severe self-harming behavior, placing him at risk of substantial physical harm. . . The acts or omissions of all Defendants were the legal and proximate cause of [his] injuries from jumping from the second tier, smashing his head into a metal table and then a cement floor, resulting in a fracture to one of his vertebrae.

(*Id.*)

The Sheriff's Defendants moved to dismiss Claim Five on the ground that Plaintiff "failed to plead facts sufficient to support" his deliberate indifference claim and, alternatively, that they are entitled to qualified immunity on the claim. (Doc. # 48 at 9–11, 21–28.)

Magistrate Judge Varholak first rejected the Sheriff's Defendants' argument that

Plaintiff failed to allege sufficient facts to support a deliberate indifference claim.  (Doc.

# 88 at 23.)  As to the objective component of the deliberate indifference standard,

Magistrate Judge Varholak noted that the parties "do not dispute that Plaintiff's mental

health issues and self-harm constituted a sufficiently serious medical need."  (*Id.* at 18.)

He thus focused on the subjective inquiry—whether Plaintiff has appropriately alleged

facts that Defendants named in Claim Five knew of and disregarded an excessive risk

to his health and safety.  (*Id.* at 18, 23.)  As the Court explained above in Section II(C),

in order to show Defendants had culpable state of mind, Plaintiff must allege that

Defendants: (1) were aware of facts from which the inference could be drawn that a

substantial risk of harm existed; (2) actually drew the inference; and (3) failed to take

reasonable steps to alleviate the risk.  *See Fisher*, 2016 WL 1175239 at *5 (quoting

*Tafoya*, 516 F.3d at 916).  Magistrate Judge Varholak determined that Plaintiff's

allegations were sufficient to satisfy those three elements of the subjective component.

(Doc. # 88 at 28.)  First, the Magistrate Judge explained that "BCJ officials had

significant information that Plaintiff posed a serious risk to himself."  (*Id.* at 23–26.)

Second, he stated that "the Complaint's allegations regarding Plaintiff's history of self-

harm at BCJ, . . . coupled with Plaintiff's repeated psychiatric episodes, . . . are

sufficient at the pleading stage to allege that Defendants McGurk, Levett, Taylor,

Contreras, Mecca, and Stevens were on notice that Plaintiff presented a serious risk of

harm to himself."  (*Id.* at 26.)  Third, he concluded that Plaintiff's allegations are

"sufficient to demonstrate that mental health professionals [Defendants] McGurk, Levett, and Taylor ignored the serious risk . . . by failing to treat his psychosis and [Defendant] Deputies Contreras, Mecca, and Stevens were indifferent to [the serious risk] . . . by allowing him to walk freely on the second tier." (*Id.* at 27–28.) Because Plaintiff satisfied the three elements of the subjective component, Magistrate Judge Varholak found "that Claim Five plausibly pleads a deliberate indifference claim" against Defendants Contreras, Mecca, Stevens, McGurk, Levett, Taylor, Pelle, and Goetz.[7] (*Id.* at 28.)

Magistrate Judge Varholak then rejected the Sheriff's Defendants' alternative argument that they were entitled to qualified immunity on Claim Five. (*Id.* at 29–31.) With respect to whether Defendants' conduct violated a constitutional or statutory right, Magistrate Judge Varholak incorporated his conclusion that Plaintiff plausibly pled a deliberate indifference claim in Claim Five, i.e., he found that Plaintiff sufficiently alleged that the Sheriff's Defendants' conduct violated his constitutional rights. (*Id.* at 31.) With respect to whether the law governing the conduct was clearly established at the time of the alleged violation, Magistrate Judge Varholak concluded that, based upon decisions of the Tenth Circuit, "as of November 2016, the law was clearly established in this Circuit that a prison official who possesses knowledge that a specific inmate presents a

---

[7] Plaintiff brings Claim Five against Defendants Pelle and Goetz only in their official capacities. (Doc. # 1 at 28.) Magistrate Judge Varholak determined that Claim Five should be permitted to proceed against Defendants Pelle and Goetz in their official capacities because he found "the allegations in support of Claim Five against Defendants sued in their individual capacities sufficient to state a claim of deliberate indifference and [because] Defendants . . . offered no alternative basis for the dismissal of the official capacity claims." (Doc. # 88 at 28 n.15.)

substantial risk of suicide must take reasonable measures—such as assuring access to adequate mental health treatment—to protect that inmate." (*Id.* at 31.) He, therefore, determined that "the Complaint alleges sufficient facts, at this stage of litigation, to defeat the Sheriff's Defendants' assertion of qualified immunity." (*Id.*)

### c. Sheriff's Defendants' Objections

The Sheriff's Defendants object to the Recommendation, asserting that "Defendants Contreras, Mecca, Stevens, McGurk, Levett, Pelle, and Goetz are entitled to qualified immunity for [Plaintiff's] fifth claim for relief." (Doc. # 96 at 11.) They take issue with the Magistrate Judge's analysis of both elements of qualified immunity. (*Id.* at 12.) As to the first element, "[Plaintiff] failed to sufficiently assert facts that support a violation of federal law" by Defendants Contreras, Mecca, Stevens, McGurk, and Levett, the Sheriff's Defendants argue. (*Id.*) They also assert that because Plaintiff "failed to plead facts showing an underlying constitutional violation, his official capacity claims [against Defendants Pelle and Goetz] must also be dismissed." (*Id.* at 19.) As to the second element of qualified immunity, the Sheriff's Defendants argue that "no Supreme Court or Tenth Circuit case establishes particularized facts showing that the conduct of [Defendants] Contreras, Mecca, Stevens, McGurk, or Levett was unlawful." (*Id.* at 12.)

### d. Discussion

#### 1. First element of qualified immunity

Plaintiff has adequately alleged in Claim Five that Defendants Contreras, Mecca, Stevens, McGurk, Levett, Taylor, Pelle, and Goetz were deliberately indifferent to a serious risk that he would harm himself on November 1, 2016, for purposes of the

Sheriff's Defendants' Motion to Dismiss. By satisfactorily alleging that their conduct violated his constitutional rights, Plaintiff satisfies the first element of defeating the Sheriff's Defendants' qualified immunity defense.

The standard for a claim of deliberate indifference includes an objective component and a subjective component, as the Court explained in Section II(C). The Sheriff's Defendants do not dispute that Plaintiff's allegations in Claim Five are sufficiently serious to satisfy the objective component. *See* (Doc. # 96 at 12–19.) They object only to Magistrate Judge Varholak's conclusion that Plaintiff's allegations also satisfy the subjective component. *See* (*id.*)

The Sheriff's Defendants' primary argument is one they previously raised in their Motion to Dismiss. *See* (Doc. # 48 at 10.) They argue that, because "personal participation in the specific constitutional violation complained of is essential" to a Section 1983 claim, Plaintiff's "general claims against a group of defendants, rather than . . . individuals," must fail. S*ee* (Doc. # 96 at 14,17, quoting *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2001).) Magistrate Judge Varholak rejected this argument in his Recommendation, noting that "the Complaint alleges that **all** Defendants were aware of 'Plaintiff's serious medical needs including self-harming behavior.'" (Doc. # 88 at 26) (emphasis added). The Sheriff's Defendants nonetheless fault the Magistrate Judge for relying on allegations that do not, in their view, contain facts specific to Defendants Contreras, Mecca, Stevens, McGurk, and Levett. (*Id.* at 16–17.)

The Court rejects the Sheriff's Defendants' argument because it is satisfied that Plaintiff alleges facts specific to Defendants Contreras, Mecca, Stevens, McGurk, and

Levett and relevant to the November 1, 2016, incident.  The Court views Plaintiff's allegations in the light most favorable to him, and Plaintiff need only allege enough factual matter both to make his claim to relief plausible on its face and to provide fair notice to Defendants.  *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013).

As to the first and second prongs of the subjective component of a deliberate indifference came, it is plausible that Defendants Contreras, Mecca, Stevens, McGurk, and Levett all were aware of facts from which the inference could be drawn that a substantial risk of self-harm by Plaintiff existed and actually drew such an inference.  As Magistrate Judge Varholak detailed (Doc. # 88 at 23–25), Plaintiff's Complaint makes numerous allegations concerning events prior to November 1, 2016.  For example, after Plaintiff attempted to gouge his eyes on March 22, 2016, a BCJ mental health worker recorded that he was "presenting with psychotic symptoms, recently attempted suicide by gouging eyes out and is a danger to himself," and on October 30, 2016, a BCJ deputy reported that Plaintiff was "beginning a manic phase," "appeared to be delusional," and "was very paranoid" but that BCJ had "no room in the Special Management section of the jail" for him.  *See* (Doc. # 1 at 8–9, 11–12.)  The Court agrees with the Magistrate Judge that, from these and other prior incidents, **all** BCJ officials likely knew of an ongoing substantial risk that Plaintiff would self-harm from such incidents.  *See* (Doc. # 88 at 23–25.)  The Sheriff's Defendants' objection that these allegations of pre-November 1, 2016 incidents do not specifically name Defendants Contreras, Mecca, Stevens, McGurk, and Levett but rather refer to "all Defendants" does not persuade the Court that Plaintiff failed to positively connect them

to the alleged constitutional violations.  Plaintiff's use of the term "Defendants" in his Complaint, which includes Defendants Contreras, Mecca, Stevens, McGurk, and Levett, is sufficient to allege an affirmative link between these Defendants and the allegedly unconstitutional conduct.  *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (rejecting a state agency director's qualified immunity defense because the plaintiff had pled an affirmative link between the allegedly unconstitutional conduct and the director by defining "Defendants" in his complaint to include the director).  The Court finds that Plaintiff satisfies the first and second prongs of the subjective component of his deliberate indifference claim.

Plaintiff has also satisfactorily alleged the third prong of the subjective component—that Defendants Contreras, Mecca, Stevens, McGurk, and Levett failed to take reasonable steps to alleviate the risk that Plaintiff would inflict grievous self-harm on November 1, 2016.  He alleges that on November 1, 2016, Defendant Contreras noted that Plaintiff "was pacing the day room and talking to himself," "is known to be very delusional," and "refuse[d] his morning medicine."  (Doc. # 1 at 12.)  Plaintiff further alleges that despite knowing that Plaintiff was "schizophrenic, delusional, unmedicated, and suicidal," Defendants Contreras, Mecca, and Stevens "released [him] to walk on the second tier of the jail," where he climbed onto the top railing and attempted to commit suicide.  (*Id.* at 12.)  As to the mental health workers Defendants McGurk and Levett, Plaintiff contends that they "failed to examine, treat, and care for [his] worsening condition and failed to send [him] for treatment . . . despite their knowledge of [his] serious medical needs, including severe self-harming."  (*Id.* at 29.)  The Court agrees

with Magistrate Judge Varholak that, at the pleading stage, these allegations suffice to demonstrate that Defendants Contreras, Mecca, Stevens, McGurk, and Levett failed to take reasonable steps to alleviate the risk that Plaintiff would harm himself on November 1, 2016.  *See* (Doc. # 88 at 27–28.)

For these reasons, the Court concludes that Plaintiff has satisfactorily alleged that Defendants Contreras, Mecca, Stevens, McGurk, and Levett violated his constitutional rights by virtue of being deliberately indifferent to a serious risk that Plaintiff would harm himself on November 1, 2016.[8]  Plaintiff has established the first requirement to defeat the Sheriff's Defendants' qualified immunity defense.

### 2.  *Second element of qualified immunity*

However, Plaintiff fails to allege that the Sheriff's Defendants named in Claim Five violated clearly established law.  A defendant's conduct "violates a clearly established constitutional right when Tenth Circuit or Supreme Court precedent renders plainly apparent the constitutional violation."  *Estate of Vallina*, 2018 WL 6331598 at *1 (citing *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011)).  The Tenth Circuit considers precedent "on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue."  *Id.* (quoting *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017)).  Because the precedent "must involve materially similar conduct

---

[8] As to the Sheriff's Defendants Pelle and Goetz, named only in their official capacity, the Sheriff's Defendants argue that "[b]ecause [Plaintiff] has failed to plead facts showing an underlying constitutional violation, his official capacity claims [against Defendants Pelle and Goetz] must also be dismissed."  (Doc. # 96 at 19.)  However, this Court concludes that Plaintiff has plead facts showing a violation of his constitutional rights.  The Sheriff's Defendants do not make an alternative argument about why Claim Five against Defendants Pelle and Goetz in their official capacities should be dismissed.

or apply with obvious clarity, qualified immunity generally protects all public officials except those who are 'plainly incompetent or those who knowingly violate the law.'" *Lowe*, 864 F.3d at 1208 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

Magistrate Judge Varholak reviewed four decisions of the Tenth Circuit and deduced that, "as of November 2016, the law was clearly established in this Circuit that a prison official who possess knowledge that a specific inmate presents a substantial risk of suicide **must take reasonable measures** . . . to protect that inmate." (Doc. # 88 at 31) (emphasis added). His statement that prison officials "must take reasonable measures" is, unfortunately for Plaintiff, little more than a general recitation of the deliberate indifference standard. It "cannot provide a source of clearly established law that controls this case because the statement of the law is insufficiently particular to the facts at hand"—specifically with regard to what a prison official with said knowledge must do. *See Estate of Vallina*, 2018 WL 6331598 at *2 (holding that a district court's statement that "there is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established right" was insufficiently particular to the case). "The Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality." *Id.* (quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)); *see also Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) ("[G]eneral rules . . . do not by themselves created clearly established law outside an 'obvious case'"). Magistrate Judge Varholak's determination that clearly established law requires a prison official aware that a specific inmate presents a substantial risk of suicide "must take reasonable measures" is simply too general and too indefinite. A reasonable officer in

the Sheriff's Defendants' shoes might not have understood that he or she was violating it by acting as the Sheriff's Defendants are alleged to have acted in Claim Five.

The Court therefore finds that neither Plaintiff nor the Magistrate Judge identified violations of clearly established law in Claim Five. The Court disagrees with the Recommendation in this regard and finds that Defendants Contreras, Mecca, Stevens, McGurk, Levett, Pelle, and Goetz are entitled to qualified immunity on Claim Five.

    2.    <u>Claim Ten</u>

        *a. Factual Background*

Claim Ten stems from the permanent blindness that resulted from the events of December 17, 2016, when Plaintiff "plucked out his eyeballs and lay for hours while the blood dried." (Doc. # 1 at 37.) Defendants Smith, Green, Berringer, and Maumau were on duty on the evening of December 17, 2016. (*Id.*); *see also* (*id.* at 17–20.) In Claim Ten, Plaintiff asserts that **all** Defendants were deliberately indifferent to his "constitutional right to receive necessary medical care" by "fail[ing] to examine, treat, and care for [Plaintiff's] worsening condition" and "fail[ing] to send [him] for treatment" prior to December 17, 2016, and by "failing to obtain and provide medical treatment for him in a timely and appropriate fashion" during the night of December 17, 2016. (*Id.* at 36–37.)

The Sheriff's Defendants moved to dismiss Claim Ten, arguing that Plaintiff fails to plead facts sufficient to satisfy the subjective component of a deliberate indifference claim. (Doc. # 48 at 12.) Alternatively, the Sheriff's Defendants asserted that they are

"entitled to qualified immunity from [Plaintiff's] deliberate indifference claims," including Claim Ten.  (*Id.* at 21–28.)

### b.  Magistrate Judge's Analysis

Magistrate Judge Varholak accepted in part and rejected in part the Sheriff's Defendants' argument that Plaintiff failed to plead facts sufficient to support his tenth claim.  (Doc. # 88 at 31–41.)  The Magistrate Judge concluded that Plaintiff's allegations satisfied the first and second elements of the subjective component of Plaintiff's deliberate indifference claim; he explained that "Plaintiff's history and symptoms were sufficient to put all Defendants on notice that Plaintiff presented a serious risk to himself."  (*Id.* at 32–34.)

Magistrate Judge Varholak was necessarily more nuanced in analyzing the third element of the subjective component, whether Defendants "ignored this serious risk" and failed to take reasonable steps to alleviate the risk; he separated Defendants into "categor[ies]."  (*Id.* at 34–40.)  As to Defendants on-duty the evening of December 17, 2016 (Defendants Smith, Green, Berringer, and Maumau), the Magistrate Judge determined "that the Complaint alleges sufficient facts to conclude that these four individuals ignored a serious risk" and that Plaintiff adequately "has stated a deliberate indifference claim" against them.  (*Id.* at 35–36.)  With respect Defendants not alleged to be present at BCJ at the relevant time (Defendants Koger, Groff, Mitchell, Clem, Hicks, Newcomb, Sisneros, Contreras, Mecca, Stevens, and Hollonds), Magistrate Judge Varholak agreed with the Sheriff's Defendants that "Plaintiff failed to allege facts to show that any of these Off-Duty [Defendants] could have taken some action prior to

December 17, [2016,] to prevent Plaintiff's self-harm." (*Id.* at 37–38.) He therefore recommended dismissal of Claim Ten against off-duty Defendants. (*Id.* at 38.) As to the mental health professionals, the Magistrate Judge concluded that "the allegations are sufficient to plausibly plead that Defendants McGurk, Levett, and Taylor ignored the serious risk of danger that Plaintiff posed to himself." (*Id.* at 38–39.) However, with respect to Defendant Mittleider, another mental health professional, Magistrate Judge Varholak determined that the single mention of her in the Complaint was insufficient to maintain Claim Ten against her. (*Id.* at 39–40.) Finally, as to the supervisory Defendants, Magistrate Judge Varholak stated that because he "found that Plaintiff has plausibly pled an underlying constitutional violation," he recommended that the Court not dismiss Defendants Pelle and Goetz. (*Id.* at 40.) Defendant Haas, however, had retired approximately six months before December 17, 2016, and the Magistrate Judge recommended that Claim Ten be dismissed as to Defendant Haas. (*Id.* at 40–41.)

Magistrate Judge Varholak also rejected the Sheriff's Defendants' argument that they are entitled to qualified immunity as to Claim Ten. (*Id.* at 41.) Referring to his qualified immunity analysis with respect to Claim Five (described in this Order in Section III(A)(1)(b)), he wrote:

> As analyzed above, as of [December 17, 2016], the law was clearly established in this Circuit that a prison official must take reasonable measures to prevent harm when that official possess knowledge that a specific inmate presents a substantial risk of suicide. As further analyzed above, the Complaint sufficiently alleges that Defendants Green, Maumau, Berringer, Smith, McGurk, Taylor, and Levett all failed to take reasonable measures to address Plaintiff's known, substantial risk of suicide.

(*Id.*)  The Magistrate Judge therefore concluded that "the Complaint alleges sufficient facts, at this stage of litigation, to defeat the Sheriff's Defendants' assertion of qualified immunity."  (*Id.*)

*c.  Sheriff's Defendants' Objections*

The Sheriff's Defendants assert in their Objection that "Defendants McGurk, Levett, Smith, Green, Berringer, Maumau, Pelle, and Goetz are entitled to qualified immunity from [Plaintiff's] tenth claim for relief" and reject the Recommendation to the extent it concluded otherwise.  (Doc. # 96 at 23–36.)  As with Claim Five, the Sheriff's Defendants argue that Plaintiff cannot satisfy either element necessary to overcome their qualified immunity defense.  (*Id.*)  With respect to the first element, they claim that Defendants McGurk, Levett, Smith, Green, Berringer, Maumau, Pelle, and Goetz were not deliberately indifferent to Plaintiff's serious medical needs and that Plaintiff therefore cannot establish a constitutional violation.  (*Id.* at 24–32.)  As to the second element, the Sheriff's Defendants assert that "no Supreme Court or Tenth Circuit case establishes a constitutional requirement regarding sudden acts of self-harm due to mental illness." (*Id.* at 32.)  They fault the Magistrate Judge's "reliance on a general statement of the deliberate indifference standard related to inmate suicide" to identify clearly established law.  (*Id.* at 36.)

*d. Discussion*

The Court concludes that Defendants McGurk, Levett, Smith, Green, Berringer, Maumau, Pelle, and Goetz are entitled to qualified immunity as to Claim Ten because Plaintiff fails to allege that they violated clearly established law on December 17, 2016.[9]

Magistrate Judge Varholak incorporated his Claim Five analysis on clearly established law he into his assessment of Claim Ten. *See* (Doc. # 88 at 41.)  His pronouncement that "the law was clearly established in this Circuit that a prison official must take reasonable measures to prevent harm when that official possesses knowledge that a specific inmate presents a substantial risk of suicide" fairs no better in the context of Claim Ten than it did in the context of Claim Five, as the Court explained in Section III(A)(1)(d) above.  By requiring only "reasonable measures," Magistrate Judge Varholak's statement of law remains a general restatement of the deliberate indifference standard and is insufficiently particular to the facts of this case.  As it did with respect to Claim Five, the Court finds that, as to Claim Ten, neither Plaintiff nor the Magistrate Judge identified violations of clearly established law, and that  Defendants McGurk, Levett, Smith, Green, Berringer, Maumau, Pelle, and Goetz are entitled to qualified immunity as to Claim Ten.

---

[9] The Court may address the elements of qualified immunity in any order.  *See Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009).  Because Plaintiff was unable to overcome the second element of qualified immunity in Claim Five and Magistrate Judge Varholak incorporated his analysis of Claim Five into Claim Ten, the Court begins here with the second element of qualified immunity.

3.    Claim Thirteen

    *a.  Applicable Legal Rules*

Plaintiff's thirteenth claim for relief is a supervisory liability claim against Defendants Pelle, Goetz, and Haas.  (Doc. # 1 at 41–42.)

In a lawsuit brought pursuant to Section 1983, "supervisory liability allows a plaintiff to impose liability on a defendant-supervisor who creates, promulgates, or implements a policy which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution."  *Cox*, 800 F.3d at 1240 (quoting *Brown v. Montoya*, 663 F.3d 1152, 1163–64 (10th Cir. 2011).  This is distinct from liability under a theory of *respondeat superior*.  *Id.*; *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).  A plaintiff asserting supervisory liability "therefore must show an 'affirmative link' between the supervisor and the constitutional violation."  *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014); *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010).  This requires "more than a supervisor's mere knowledge of his subordinate's conduct."  *Schneider*, 717 F.3d at 767.  Rather, the plaintiff must satisfy "three elements required to establish a successful [Section] 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind."  *Id.* (citing *Dodds*, 614 F.3d at 1195.)

The Sheriff's Defendants challenge only the third element, state of mind.  *See* (Doc. # 48 at 21.)  The third element requires "plaintiffs to demonstrate 'that each defendant acted with the constitutionally requisite state of mind' by 'identifying specific

32

policies over which particular defendants possessed supervisory responsibility that violate their clearly established constitutional rights.'" *Cox*, 800 F.3d at 1249 (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)). The state of mind element also requires the plaintiff to demonstrate that the defendant's state of mind was "'no less than the *mens rea* required' of any of his subordinates (i.e., Jail employees) to commit the underlying constitutional violation.'" *Id.* (quoting *Estate of Booker*, 745 F.3d at 435). In the context of jailhouse suicide, "this is a **particularized** state of mind: actual knowledge by a prison official of an individual inmate's substantial risk of suicide." *Id.*

### b. Factual Background

In Claim Thirteen, Plaintiff alleges that Defendants Pelle's, Goetz's, and Haas's "failure to properly train and supervise subordinate employees was the moving force and proximate cause of the violation of [Plaintiff's] constitutional rights." (Doc. # 1 at 41–42.) Plaintiff also alleges that their "acts or omissions . . . caused [him] damages in that he suffered extreme physical and mental pain as well as permanent blindness." (*Id.* at 42.) He does not identify any particular incident as the basis of Claim Thirteen, nor does he suggest that Defendants Pelle, Goetz, and Haas ever interacted with him.

The Sheriff's Defendants moved for dismissal of Claim Thirteen on the ground that Plaintiff failed to plead facts supporting a claim of Section 1983 supervisory liability for deliberate indifference. (Doc. # 48 at 20–21.) They argued that Plaintiff's allegations failed to establish that Defendants Pelle, Goetz, and Haas had the requisite state of mind to be held liable for any constitutional violations at the BCJ. (*Id.* at 21.) They also

asserted that Defendants Pelle, Goetz, and Haas are entitled to qualified immunity

against Claim Thirteen.  (*Id.* at 21.)

### c.  Magistrate Judge's Analysis

Magistrate Judge Varholak was satisfied that Plaintiff's allegations in Claim

Thirteen stated a claim for relief under a theory of supervisory liability.  (Doc. # 88 at

42–43.)  As to the disputed third element, state of mind, he wrote:

> [T]he Complaint alleges that "all of the Defendants knew of Plaintiff's
> psychosis, and self-harming heavier."  The Complaint further alleges that
> BCJ's own records indicate that Plaintiff was "well known to the BCJ staff."
> Given the seriousness of Plaintiff's alleged delusions and the multiple
> attempts at self-harm . . . , it is plausible to conclude at the pleading stage
> that the Sheriff and supervisory personnel were aware of Plaintiff's serious
> psychosis and attempts at self-harm.

(*Id.*) (internal citations omitted).  Magistrate Judge Varholak recommended that the

Sheriff's Defendants' Motion to Dismiss be denied as to Claim Thirteen, implying that he

determined Plaintiff pled adequate facts to support his supervisory liability claim.  (*Id.* at

43.)  He did not address the Sheriff's Defendants' alternative argument that Defendants

Pelle, Goetz, and Haas are entitled to qualified immunity on Claim Thirteen.  *See*

*generally* (*id.*)

### d.  Sheriff's Defendants' Objections

The Sheriff's Defendants assert that Defendants Pelle, Goetz, and Haas are

entitled to qualified immunity on Plaintiff's thirteenth claim for relief and take issue with

the Recommendation for its failure to address that argument.  (Doc. # 96 at 37–41.)

They contend that Plaintiff cannot satisfy either element necessary to overcome

qualified immunity.  (*Id.* at 37–38.)  As to the first element, the Sheriff's Defendants

claim that Plaintiff cannot show a constitutional violation by Defendants Pelle, Goetz, and Haas because he has not alleged that they were personally involved or had culpable states of mind.  (*Id.* at 38–40.)  With respect to the second element, the Sheriff's Defendants argue that Plaintiff has not "identified a case where generalized allegations of failing to fulfill an alleged duty to train jail personnel on recognizing symptoms of mental illness and responses to such illness constituted a basis for personal liability."  (*Id.* at 41.)

### e.  Discussion

The Court agrees with the Sheriff's Defendants that Defendants Pelle, Goetz, and Haas have qualified immunity as to Claim Thirteen because Plaintiff does not allege that they violated clearly established law.  "[T]o satisfy the second party of the qualified immunity test in the context of [Plaintiff's] supervisory-liability claim against [Defendants Pelle, Goetz, and Haas], [Plaintiff] must show that . . . 'clearly established law would not have put a reasonable official in [Defendants Pelle's, Goetz's, or Haas's] position on notice that his **supervisory conduct** would' violate [Plaintiff's] constitutional rights."  *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018) (quoting *Cox*, 800 F.3d at 1247).  In other words, Plaintiff must "identify a case where an official acting under similar circumstances as [Defendants Pelle, Goetz, and Haas] was held to have violated" the Constitution.  *Id.* (quoting *White*, 137 S. Ct. at 552.)  Plaintiff does not even address the Sheriff's Defendants' qualified immunity defense as it applies to Claim Thirteen, let alone identify clearly established law relevant to the facts he alleges in the

claim.  *See* (Doc. # 72 at 28–32; Doc. # 102 at 28–33.)  He therefore fails to overcome the Sheriff's Defendants' qualified immunity defense to Claim Thirteen.

      4.     <u>Conclusion on the Sheriff's Defendants' Objection</u>

For the foregoing reasons, the Court agrees with the Sheriff's Defendants' Objection and concludes that the Sheriff's Defendants are entitled to qualified immunity with respect to Claims Five, Ten, and Thirteen.  It rejects the Recommendation to the extent it suggested otherwise.

## B.    DEFENDANT TAYLOR'S OBJECTIONS

Defendant Taylor, a mental health worker at BCJ but **not** employed by the Boulder County, its Sheriff's Office, or the BCJ, *see* (Doc. # 48 at 6 n.1), objects to Magistrate Judge Varholak's conclusion that Plaintiff's allegations were sufficient to state a plausible claim for deliberate indifference against her in Claims Five and Ten. (Doc. # 91 at 3–4.)  She criticizes his Recommendation because:

> The Recommendation rests on the overarching inference . . . that, because Plaintiff had a history of psychosis and had engaged in self-harm at times in the past, each mental health provider who saw Plaintiff . . . must have observed the same unremitting constellation of symptoms, complaints, and behavior, all at a level that would cause the provider to draw the inference that Plaintiff was at serious risk of engaging in self-harming behavior at that time.

(*Id.* at 4.)  For the following reasons, the Court agrees withDefendant Taylor's Objection.

      1.     <u>Claim Five</u>

The Court explained the factual background of Claim Five, the legal standard for a deliberate indifference claim, and Magistrate Judge Varholak's analysis of the adequacy of Claim Five in Sections II and III above.  In short, Magistrate Judge

Varholak concluded that Plaintiff has plead sufficient facts to state a deliberate indifference claim against several Defendants, including Defendant Taylor. (Doc. # 88 at 23–28.)

Defendant Taylor argues that Plaintiff cannot satisfy the subjective component of a deliberate indifference claim because his allegations that Defendant Taylor had actual knowledge of the substantial risk that he would self-harm are deficient. (Doc. # 91 at 7–10.) She asserts that she "had only one visit with [Plaintiff]—on September 20, 2016—before he jumped from the second tier . . . on November 1, 2016," and that allegations about that single visit "are insufficient to show that [she], on that date, was aware that Plaintiff was at a serious risk of engaging in self-harming conduct or that he needed immediate treatment beyond what he was being provided." (*Id.* at 7-8.)

The Court agrees with Defendant Taylor. Plaintiff has not adequately alleged in Claim Five that Defendant Taylor was deliberately indifferent to a serious risk that he would harm himself on November 1, 2016, as required in order to survive a Rule 12(b)(6) motion to dismiss. Defendant Taylor was in a different position to Plaintiff than the Sheriffs' Deputies; unlike the jailhouse deputies, Defendant Taylor met with Plaintiff only once, after which she noted in Plaintiff's chart that he was not taking his medications and "may begin to decompress." (Doc. # 1 at 11.) Plaintiff's sending of a kite to Defendant Taylor on September 20, 2016, which indicated that he wanted to be seen for anxiety and included nonsensical writings, is insufficient to sustain a plausible claim that Defendant Taylor actually knew that Plaintiff was at serious risk of self-harm

on November 1, 2016. The Court thus dismisses Claim Five as alleged against Defendant Taylor.

2. <u>Claim Ten</u>

The Court summarized the factual background and the Magistrate Judge's analysis of Claim Ten in Section III(A)(2) above. In brief, Magistrate Judge Varholak determined that Plaintiff's allegations satisfied the first and second elements of the subjective component of a deliberate indifference claim because "Plaintiff's history and symptoms were sufficient to put all Defendants on notice that Plaintiff presented a serious risk to himself." (Doc. # 88 at 32–34.) As to the third element of the subjective component, he concluded that, with respect to the mental health workers, the allegations "are sufficient to plausibly plead that Defendants McGurk, Levett, and Taylor ignored the serious risk of danger that Plaintiff posed to himself." (*Id.* at 38–39.)

Defendant Taylor makes the same objection to the Magistrate Judge's assessment of Claim Ten that she did as to Claim Five, arguing that Plaintiff cannot satisfy the subjective component of a deliberate indifference claim because his allegations that Defendant Taylor had actual knowledge of the substantial risk that he would self-harm are deficient. (Doc. # 91 at 10–12.) She emphasizes that Plaintiff only alleges that they had one more interaction between when he jumped off the second floor on November 1, 2016 (at issue in Claim Five), and when he gouged his eyes out on December 16, 2016. (*Id.* at 11.) The allegations about that single visit on November 7, 2016, Defendant Taylor argues, "are insufficient to inter that . . . she was aware of

facts indicating he was at serious risk of harming himself . . . and that she actually drew that inference." (*Id.*)

For the reasons it identified in the preceding subsection on Claim Five, the Court agrees. Plaintiff has not adequately alleged in Claim Ten that Defendant Taylor was deliberately indifferent to a serious risk that he would harm himself on December 16, 2016, for purposes of Defendant Taylor's Motion to Dismiss. Claim Ten as alleged against Defendant Taylor must be dismissed pursuant to Rule 12(b)(6).

## IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. The September 18, 2018 Recommendation (Doc. # 88) is AFFIRMED AND ADOPTED IN PART and REJECTED IN PART.

2. **Claim One**: Both Motions to Dismiss (Doc. ## 48, 66) are GRANTED to the extent they seek dismissal of Claim One. Claim One is DISMISSED in its entirety.

3. **Claim Five**: Claim Five is DISMISSED in its entirety.

   a. The Sheriff's Defendants' Motion to Dismiss (Doc. # 48) is GRANTED to the extent it seeks dismissal of Claim Five as alleged against Defendants Contreras, Mecca, Stevens, McGurk, Levett, Pelle, and Goetz.

   b. Defendant Taylor's Motion to Dismiss (Doc. # 66) is GRANTED to the extent it seeks dismissal of Claim Five as alleged against her.

4. **Claim Ten:** Claim Ten is DISMISSED in its entirety.

a. The Sheriff's Defendants' Motion to Dismiss (Doc. # 48) is GRANTED to the extent it seeks dismissal of Claim Ten as alleged against the Sheriff's Defendants.

b. Defendant Taylor's Motion to Dismiss (Doc. # 66) is GRANTED as to both Defendants Taylor and Mittleider.  Defendants Taylor and Mittleider are dismissed from this action.

5.  **Claim Thirteen**: The Sheriff's Defendants' Motion to Dismiss (Doc. # 48) is GRANTED to the extent it seeks dismissal of Claim Thirteen.  Claim Thirteen is DISMISSED in its entirety.

6. The Sheriff's Defendants' Motion to Dismiss (Doc. # 48) is DENIED as to all other claims and Defendants.

DATED: March 5, 2019

BY THE COURT:


CHRISTINE M. ARGUELLO
United States District Judge