THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02941-CMA-STV

RYAN PARTRIDGE,

Plaintiff,

v.

T. SMITH, in his individual and official capacity;
KARMEN KOGER, in her individual and official capacity;
THOMAS GROFF, in his individual and official capacity;
ROBERT HICKS, in his individual and official capacity;
DAN NEWCOMB, in his individual and official capacity;
CHUCK SISNEROS, in his individual and official capacity;
GREGORY CLEM, in his individual and official capacity;
VILI MAUMAU, in his individual and official capacity;
ANTHONY HOLLONDS, in his individual and official capacity;
LYDIA MITCHELL, in her individual and official capacity;
BOULDER COUNTY SHERIFF'S OFFICE,

Defendants.

---

**BOULDER COUNTY SHERIFF'S OFFICE MOTION FOR JUDGMENT ON THE PLEADINGS**

---

The Boulder County Sheriff's Office (the "Sheriff's Office") moves to dismiss

Claims 11 and 12 of the Complaint under Fed. R. Civ. P. 12(c). In support, the Sheriff's

Office states as follows:

**Efforts to Comply with CMA Civ. Practice Standard 7.1D and D.C.COLO.LCivR. 7.1(a)**

Document Number: 269209

On April 29, 2019, counsel for the Sheriff's Office notified Plaintiff's counsel that the Sheriff's Office intended to file this motion and specifically explained the grounds for the motion. Plaintiff's counsel stated Plaintiff will oppose the motion.

## Procedural Background

Plaintiff Ryan Partridge ("Partridge") filed a complaint against twenty-two defendants related to various incidents that took place when he was incarcerated at the Boulder County Jail. The Sheriff's Defendants filed a motion to dismiss, but no party filed a motion or other responsive pleading related to Claims 11 and 12. Those claims named only "Boulder County," and the Sheriff's Defendants took the position that no responsive pleading was necessary because "Boulder County" was not included in the caption nor was it served with a summons and complaint.

For purposes of resolving the dispute about service and properly named parties, counsel for the individual and official capacity defendants agreed at the April 5, 2019, scheduling conference to treat the "Boulder County Sheriff's Office" as the defendant where the Complaint alleges an ADA or Rehabilitation Act claim against Boulder County. (*See* Courtroom Minutes/Minute Order [ECF 114].)

## Background

*I.   Partridge's mental illness, physical altercations, and attempts at self-harm.*

During 2016, the period relevant to the Complaint, Plaintiff Ryan Partridge was arrested and incarcerated at the Boulder County Jail (the "Jail") on at least two separate occasions. (Compl. ¶¶ 19, 33-34 [ECF 1].) Partridge is diagnosed with schizophrenia, a

mental illness with symptoms including psychosis, auditory and visual hallucinations, delusions, and paranoia. (*Id.* ¶ 33.)

During Partridge's multiple but intermittent stays in the jail, the interactions between jail deputies and Partridge sometimes involved physical altercations. For example, on two occasions, deputies forcibly placed Partridge in a restraint chair to prevent him from harming himself. (Compl. ¶¶ 28, 32.) On five other occasions, Partridge resisted commands of deputies and was ultimately physically restrained by jail deputies. (*Id.* ¶¶ 24, 27, 53, 57, 60.)

Partridge's illness also resulted in self-harm or attempts at self-harm. In February or March of 2016, he allegedly struck his head against a toilet in his cell. (Compl. ¶¶ 3, 21.) He allegedly attempted to gouge his eyes on March 22 while at the Jail, and again on March 28 while at Boulder Community Hospital. (Compl. ¶¶ 27-28, 31.) He also alleges that he attempted suicide by jumping off the railing on the second floor of the Jail on November 1, 2016 (*id.* ¶ 45), and that he attempted to jump from the second floor again on December 1, 2016 (*id.* ¶ 52). On December 17, Partridge used his bare hands to gouge his eyes while in his cell, causing injuries that left him blind. (*Id.* ¶¶ 1, 76.)

II.     *Responses to Partridge's mental illness and self- harm.*

The first alleged incident of self-harm took place in February or March of 2016. (Compl. ¶¶ 3, 21.) Jail staff's responses to Partridge's behavior during that timeframe included placement in the Special Management Module, a visit by a mental health

worker, and an examination by an outside psychiatrist, who prescribed anti-psychotic medication. (*Id.* ¶¶ 24-25, 33.)

On March 22, when Partridge first attempted to gouge his eyes, two deputies observed the behavior and had him placed in a restraint chair. (Compl. ¶ 28.) Two days later, a mental health worker and a nurse determined that Partridge was still presenting with psychotic symptoms. (*Id.* ¶ 29.) The Jail transported Partridge to Boulder Community Hospital, where he was placed on a 72-hour hold. (*Id.* ¶ 31.)

The second eye gouging attempt allegedly took place while Partridge was receiving treatment at Boulder Community Hospital on March 28. (Compl. ¶¶ 29, 31.) The Complaint does not specify the nature of the treatment Partridge received at Boulder Community Hospital, but it states the hospital returned Partridge to the Jail on March 29. (*Id.* ¶ 32.) In May, Partridge transferred from the Jail to a restoration to competency program. (*Id.* ¶¶ 33-34.) After completing the program, Partridge was out of jail for three months. (*Id.*)

Partridge returned to the Jail in September of 2016. (*Id.* ¶ 34.) On September 15, Partridge requested a meeting with mental health staff. (*Id.* ¶ 36.) The following day, a jail mental health counselor met with Partridge. (*Id.* ¶ 37.) On September 20, Partridge asked to be seen by mental health staff regarding anxiety. (*Id.* ¶ 39.) The Complaint indicates that mental health personnel made chart notes regarding Partridge's mental health the same day. (*Id.* ¶ 39.)[1] On October 30, jail deputes observed Partridge

---

[1] The Complaint does not specify whether mental health personnel did or did not visit Partridge on September 20, but it makes little sense that a counselor would make chart notes in the absence of a personal interaction. (*See* Compl. ¶ 39.)

Document Number: 269209

4

displaying delusional and paranoid behaviors. (*Id.* ¶ 43.) Jail deputies contacted mental health personnel and moved Partridge to the Jail's disciplinary module because there was no room in the Special Management Section of the jail. (*Id.*)

Partridge jumped from the second tier of the jail on November 1. (*Id.* ¶ 45.) As a result, he was placed in special population housing for seven days. (*Id.* ¶ 49.) A mental health worker visited Partridge on November 2, and another counselor visited him on November 7. (*Id.* ¶¶ 47-48.) Jail staff cleared Partridge for general population after determining Partridge was no longer a danger to himself. (*Id.* at 49.)

### A. Transfer to CMHIP

On March 9, a Boulder County judge found Partridge not competent to proceed in his criminal case and ordered an evaluation of Partridge at a state mental hospital. (Compl. ¶ 26.) Partridge remained at the Jail while awaiting the court-ordered evaluation until his hospitalization at Boulder Community Hospital on March 28. (*Id.* ¶¶ 30-31.) The Complaint indicates that Partridge returned to the Jail on March 29. (*Id.* ¶ 32.) On May 12, Partridge was transferred to the RISE Program at the Arapahoe County Jail for restoration to competency, where he remained until June 7. (*Id.* ¶ 33.)

Partridge returned to the Jail after an arrest on approximately September 15. (*Id.* ¶¶ 35-36.) On September 16, a Boulder court once again ordered that Partridge undergo a competency evaluation. (*Id.* ¶ 38.) A CMHIP psychiatrist conducted the evaluation six weeks later and found Partridge competent. (*Id.* ¶¶ 41, 50.) Based on this finding of competency, a Boulder judge sentenced Partridge to work release at the Jail allegedly on November 17. (*Id.* ¶ 50.)

On December 6, Jail Corrections Program Coordinator Shane McGurk requested that the court order Partridge to CMHIP for a competency evaluation. (*Id.* ¶ 56.)[2] McGurk requested that Partridge be "bumped to the top of the list for his safety and staff safety." (*Id.*) Despite McGurk's request, CMHIP did not immediately accept Partridge for evaluation. Accordingly, McGurk sought an additional court order for an evaluation on December 16. This time, McGurk submitted an affidavit that outlined Partridge's need for urgent psychiatric treatment. (*Id.* ¶ 61.) The district court issued an additional transfer order on December 16, but there is no allegation in the Complaint indicating that CMHIP was ready or willing to accept Partridge—court order or not—on that date or on December 17.

### B. Involuntary administration of anti-psychotic medication

On March 7, 2016, Partridge received a prescription for anti-psychotic medication. (Compl. ¶ 25.) The Complaint does not indicate whether Partridge voluntarily took this medication between the time he received the prescription and the time he transferred to the RISE program. As of June 7, a psychiatrist noted that Partridge was "non-compliant" with his medication but nonetheless cleared him for release from jail. (*Id.* ¶ 33.) When Partridge returned to the Jail in September, mental health personnel noted that Partridge was not taking medications for his schizophrenia

---

[2] Colorado has a statutory process for transfer to CMHIP. The Colorado Department of Human Services ("CDHS") is obligated to provide competency evaluations for people charged with criminal offenses and to provide treatment for those found incompetent to proceed. Colo. Rev. Stat. §§ 16-8.5-101, *et seq.* The CDHS is involved in litigation over its alleged failure to complete competency evaluations. *See Ctr. for Legal Advocacy v. Barnes*, No. 11-CV-02285-NYW (D. Colo).

diagnosis. (*Id.* ¶ 39.) Significantly, the Complaint does not contain an allegation that any Defendant failed to provide medication when Partridge desired it. Instead, Partridge alleges that "the Defendants never sought to *forcibly* administer . . . anti-psychotic medications . . ." (Compl. ¶ 84.) (emphasis added)[3]

## Standard of Review

The standard for a motion for judgment on the pleadings is the same as the standard for dismissal under Rule 12(b)(6). *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005). Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While this "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*; *see also Twombly*, 550 U.S. at 555. A complaint that tenders "naked assertions" devoid of "further factual enhancement" is insufficient to withstand a Rule 12(b)(6) motion to dismiss and should be dismissed by the court. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

Because the Court must assume that the factual allegations in the complaint are true for the purposes of a 12(b)(6) motion, "[f]actual allegations must be enough to raise

---

[3] Involuntary administration of medication is governed by Colorado law. Involuntary mental health treatment must be provided by a facility designated or approved by the executive director of the CDHS to provide such treatment. Colo. Rev. Stat. § 27-65-107(1)(c); *see* § 27-65-102(6) and (7). The Jail is not one of those designated facilities. (*See https://www.colorado.gov/pacific/cdhs/mental-health-emergency-holdinvoluntary-commitment.*)

Document Number: 269209

a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). Importantly, "the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## Argument

*I.      Partridge failed to state a claim under the ADA or the Rehabilitation Act*

Partridge's Eleventh Claim is for violation of Title II the Americans with Disabilities Act 42 U.S.C. § 12132 ("ADA"), and his Twelfth Claim is for violation of the Rehabilitation Act 29 U.S.C. §701. The standards for Title II of the ADA are generally the same as the Rehabilitation Act and the Court should consider the claims together. *See Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2nd Cir. 2004). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or actives of a public entity, or be subject to discrimination by any such entity." § 12132. Title II applies to jails. *See Pa. Dep't of Corrs. v. Yesky,* 524 U.S. 206, 210 (1998).

To state a claim under Title II of the ADA, a plaintiff must prove: (1) that he or she is a qualified individual with a disability;[4] (2) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such

---

[4] For purposes of this Motion, the Sheriff's Office is assuming Partridge has sufficiently alleged he is a qualified individual with a disability.

Document Number: 269209

8

exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *J. V. ex rel. C. V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016).

Partridge generally alleges that the Sheriff's Office discriminated against him based on his disability (*see* Compl. ¶ 200), but he has failed to allege facts that could establish such discrimination. The Complaint does not refer to any specific action taken by the Sheriff's Office or any individual that was allegedly discriminatory, but instead refers to inadequate training leading to "a violation of constitutional rights, such as those described herein . . . ." (*Id.* ¶ 206.) Presumably, Partridge is alleging that the various incidents giving rise to his § 1983 deliberate indifference[5] and excessive force claims also give rise to his ADA and Rehabilitation Act claims.

### A. Partridge has failed to state an ADA claim based on failure to accommodate.

The ADA requires public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). Accordingly, the Sheriff's Office must provide a reasonable accommodation under the ADA if it knows an individual is disabled and "requires an accommodation of some kind to participate in or receive the benefits of its services." *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir. 2007). Partridge generally alleges that the Sheriff's Office failed to

---

[5] The Court has dismissed Partridge's deliberate indifference claims. (Order 39-40 [ECF 108].)

Document Number: 269209

9

reasonably accommodate him, but fails to identify any request for accommodation,[6] the nature of any accommodation requested, how such accommodation would have allowed full access to its services, or how the Sheriff's Office allegedly became aware of a need for accommodation.

Presumably, Partridge's reasonable accommodation claim relates to his contention that his mental health care was insufficient. However, it is well-established that allegedly inadequate medical care in jail cannot be the basis of an ADA reasonable accommodation claim. *Rasahd v. Doughty*, 4 F. App'x 558, 560 (10th Cir. 2001) (failure to provide medical treatment to a disabled prisoner does not constitute an ADA violation); *Shaymus v. Tulare Cty.*, 2015 U.S. Dist. LEXIS 70828 (E.D. Cal.. May 29, 2015) (failure of a jail "to provide competent and appropriate mental-health care . . . is insufficient to state a claim under the ADA."); *Cheek v. Nueces Cty. Tex.*, No. 2:13-CV-26, 2013 U.S. Dist. LEXIS 110039, at *52-53 (S.D. Tex. Aug. 5, 2013) (the ADA does not compel a jail to provide any particular mental health treatment for pretrial detainees). Accordingly, Partridge has failed to state an ADA reasonable accommodation claim.

### B. Partridge failed to state an ADA claim based on discriminatory use of force.

To state an ADA claim, Partridge must allege facts showing discrimination and that "that discrimination was by reason of the plaintiff's disability." *Albuquerque Pub. Sch.*, 813 at 1295. Partridge has failed to allege facts showing that jail employees' (1)

---

[6] Because Partridge does not contend he requested accommodation, he must show that the need for accommodation was obvious. *J. H. v. Bernalillo Cty.*, 806 F.3d 1255, 1261 (10th Cir. 2015).

Document Number: 269209

use of force was discriminatory or that (2) such alleged discrimination was based on Partridge's disability.

First, the facts alleged by Partridge related to use of force do not fall into the narrow set of circumstances where such use of force could be considered discriminatory under the ADA. "[A]n ADA discrimination claim may be viable when a plaintiff disability might cause the police to incorrectly suspect that an individual committed a crime." *Albuquerque Pub. Sch.*, 813 F.3d at 1258 n.2. Examples of these cases cited by the Tenth Circuit in *Bernalillo County*, 806 F.3d at 1260, include: *Lewis v. Truitt*, 960 F. Supp. 175, 176-77, 179 (S.D. Ind. 1997) (holding that a genuine issue of material fact existed as to whether plaintiff's arrest for resisting law enforcement had been caused by his disability, which was deafness); *Jackson v. Inhabitants of Sanford*, Civ. No. 94-12-P-H, 1994 U.S. Dist. LEXIS 15367, at *1, *6 (D. Me. Sept. 23, 1994) (unpublished ) (denying summary judgment for the defendant police officer on a claim involving discrimination against the disabled when the police officer arrested the plaintiff for driving under the influence after the plaintiff had suffered a stroke). Partridge makes no attempt to explain how use of force against a mentally ill inmate constitutes discrimination.

Further, the facts alleged in the Complaint show that jail personnel's use of force was not a response to Partridge's disability, but rather to his behavior. (See ¶ 24 (Partridge jammed food tray in his cell door and then "slipped out" of the door; Partridge "planted his feet and refused to keep walking" to a disciplinary cell); ¶ 27 (Partridge refused to move his hands and arms from the cell door preventing it from closing); ¶ 28

(Partridge placed in restraint chair to prevent him from gouging his eyes); ¶ 32 (Partridge placed in a restraint chair because he was forcing himself to vomit); ¶ 53 (Partridge "swung at" deputy trying to take Partridge to visit his attorney); ¶ 57 (Partridge refused to follow orders while being handcuffed and pulled his arm through the foot port); ¶ 60 (Partridge jumped up, screamed nonsense, and rushed toward his cell door); and ¶ 72 (Partridge not compliant when attempting to place handcuffs on him).)

A use of force against Partridge in response to non-compliant, assaultive, or self-harming behavior does not violate the ADA. *See Bernalillo Cty*, 806 F.3d at 1260 (No ADA violation where it was "the battery, rather than a disability" that led to plaintiff's arrest). Even where a plaintiff claims that his behavior was a "manifestation of his disability," the conduct may be regulated so long as action is not taken "by reason of disability." *Albuquerque Pub Sch.*, 813 F.3d at 1296; *see Gohier v. Enright*, 186 F.3d 1216, 1222 (10th Cir. 1999) (use of force in response to threatening conduct by individual with disability does not violate the ADA); *see Smith v. City of Troy*, 874 F.3d 938, 947 (6th Cir. 2017) (alleged excessive use of force does not show intentional disability discrimination under the ADA). Because no allegation in the Complaint indicates that the reason for the use of force was Partridge's disability, he has failed to state an ADA or Rehabilitation Act claim. *See Villa v. Dep't of Corrs.*, 664 F. App'x. 731, 733-34 (10th Cir. 2016) (unpublished) (upholding dismissal where district court found conclusory statement of discrimination insufficient to state a claim).

## Conclusion

Because Partridge has failed to allege facts that support an ADA or Rehabilitation Act claim, the Court should enter judgment in the Sheriff's Office's favor on those claims.

Dated: May 14, 2019.

                                              Respectfully submitted,

                                              BOULDER COUNTY ATTORNEY

By: */s/ David Hughes*
      David Hughes
      Dea Wheeler
      Catherine R. Ruhland
      P.O. Box 471
      Boulder, CO 80306
      (303) 441-3190
      dhughes@bouldercounty.org
      dwheeler@bouldercounty.org
      truhland@bouldercounty.org

*Counsel for Boulder County Sheriff's Office*

Document Number: 269209